TYSON, Judge.
The indictment charges grand larceny of a pocketbook containing a billfold and a pistol of the aggregate value of $75.00, the personal property of Geraldine Holley. The jury returned a verdict of guilty as charged, fixing punishment at five years imprisonment, and the trial judge set sentence accordingly.
The State’s evidence commenced with the testimony of Geraldine Holley, who stated that on or about November 2,1976, she was employed by the Chancey-Herring Paper Company in Headland, Alabama. On that date, Ms. Holley drove to her employer’s place of business to receive her monthly paycheck. When Ms. Holley arrived at her employer’s place of business, she parked in the parking area facing another automobile owned by Mr. West Herring, who was seated in his automobile reading a newspaper. Ms. Holley stated that Mr. Herring in *398 formed her that he, too, was waiting to receive his paycheck from Mr. Larry Chan-cey, whose truck was parked between Mr. Herring’s and Ms. Holley’s automobiles. Ms. Holley indicated that she walked to Mr. Herring’s automobile and conversed with him for a few minutes while they both waited. During this brief conversation, a white delivery van pulled into the parking area and parked next to Ms. Holley’s automobile on the passenger side. The driver of the van, according to Ms. Holley, looked like the appellant. The driver carried some things into the building and came back outside shortly thereafter. Ms. Holley indicated that the driver of the van walked to the front of his van, checked under the hood, then went around , to the passenger side of the van (which was adjacent to the passenger side of Ms. Holley’s automobile) and finally walked back around to the van’s driver’s side. The van pulled out of the parking lot and headed down the highway in the direction of Headland. A short time thereafter, Mr. Chancey brought Mr. Herring and Ms. Holley their paychecks, whereupon Ms. Holley indicated that she had to leave. When Ms. Holley got into her automobile, she noticed that her passenger side door was ajar and that her purse was missing. Ms. Holley stated that she informed Mr. Herring of the theft, who informed Mr. Chancey, whereupon the police were notified. Ms. Holley testified that, from the time she parked in the parking area until the time she discovered her purse was missing, no one other than the appellant had been in the immediate vicinity of her automobile.
Mr. West Herring’s testimony substantially corroborated that of Ms. Holley concerning the events on November 2, 1976. In clarifying, Mr. Herring stated that, from their vantage point in his automobile, he and Ms. Holley could not see all of her automobile. Mr. Herring identified the appellant as the driver of the van that parked beside Ms. Holley’s automobile.
The State next called Mr. Neal Forrester, a police officer for the City of Headland. Officer Forrester testified that, on November 2, 1976, he was dispatched to investigate a reported larceny at Chancey-Herring Paper Company. Officer Forrester testified that Ms. Holley reported to him a stolen purse containing a pistol. This information, together with a description of the vehicle and driver, was communicated by police radio to area police stations. Officer Forrester’s investigative report showed that the appellant was taken into custody by Sergeant Jimmy Williams in Ozark.
Sergeant Jimmy Williams testified that, on November 2, 1976, he was employed by the Ozark Police Department. On that date, he received a report on the police radio concerning a stolen purse containing a pistol, together with a description of the suspect and the vehicle he was driving. The description of the vehicle led Sergeant Williams to the Southern Star Newspaper in Ozark where a van matching the reported description was parked. Sergeant Williams ascertained from personnel in the Southern Star Office that Calvin Cole, an employee, had just returned from Headland in the subject vehicle. Sergeant Williams testified that he could not find the appellant on the premises. Cruising through town, Sergeant Williams observed the appellant driving his personal automobile, whereupon he stopped the appellant and took him into custody. Sergeant Williams stated that he called for another officer to assist him by driving the appellant’s automobile to the police station. A search of the appellant’s automobile revealed a pistol which was marked as State’s Exhibit One. Sergeant Williams stated that he did not question the appellant, nor did the appellant sign a waiver of rights.
The sole defense witness was the appellant. The appellant testified that he went to Chancey-Herring Paper Company in Headland to make a delivery. The appellant stated that the testimony of Ms. Holley and Mr. Herring, as to the arrangement of their cars in relation to the van he was driving, was accurate. The appellant explained that, after he exited from the paper company’s building, he walked to his van and checked the oil in accordance with his employer’s instructions. After raising the *399 hood, he walked around to the passenger side of the van to get a rag from the van. It was at this time he saw a pistol in a holster lying on the ground between the van and Ms. Holley’s automobile. He picked it up, took it back to Ozark with him and there transferred it to his personal car. The appellant stated that he took nothing other than the pistol and holster, which appeared to him to have been abandoned.
The State recalled Ms. Holley, who testified that, in addition to the pistol and holster, the police recovered a small Timex watch, which she identified as belonging to her daughter. Ms. Holley stated that the watch had been in her purse.
I
This Court, per Harris, P. J., denied appellant’s motion to correct or modify the record, made pursuant to Rule 10(f), Alabama Rules of Appellant Procedure (1977). Accordingly, we do not address ourselves to matters raised in the appellant’s brief which are not contained in the record on appeal. Lucy v. State, Ala.Cr.App., 340 So.2d 840. Similarly, we can dispose of the appellant’s contention that the trial court should have ordered a continuance sua sponte in light of the fact that appellant’s counsel was appointed on the same day as the trial of the case. In examining this record, we note that no motion for a continuance was interposed, nor was there any ruling of the trial court invoked on this matter. Thus, this question is not properly presented for review. Williams v. State, 51 Ala.App. 694, 288 So.2d 753 (1974). Cf., Kearley v. State, 52 Ala.App. 405, 293 So.2d 322 (1974).
II
The appellant contends that the trial court erred in appointing counsel to represent the appellant, absent a request by the appellant for appointed counsel or waiver of the right to represent himself. The Sixth Amendment to the United States Constitution provides in pertinent part:
“In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense.”
In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that an indigent accused be afforded the right to have counsel appointed to represent him at trial. On November 14, 1977, the appellant in the instant case made known to the court that he was financially unable to employ counsel to represent him at trial, whereupon the trial court appointed counsel to represent the appellant. Such action by the trial court was entirely appropriate. Donahay v. State, 287 Ala. 716, 255 So.2d 599 (1971); Taylor v. State, 291 Ala. 756, 287 So.2d 901 (1973).
In Farretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that the Sixth Amendment “grants to the accused personally the right to make his defense.” Farretta v. California, supra, at 819, 95 S.Ct. at 2533. However, it is manifest that an accused cannot assert his constitutional right to proceed pro se unless and until he has first executed a competent, voluntary, and intelligent waiver of his constitutional right to appointed counsel. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United States v. Dujanovic, 486 F.2d 182 (9th Cir. 1973). In the instant case, the appellant never waived his constitutional right to appointed counsel, nor did he indicate that he wished to proceed pro se. Hence, we find no merit in the appellant’s contention that the trial court denied the appellant his right to proceed pro se.

Ill

The appellant contends that his substantive rights were prejudiced when the prosecutor attempted to show the appellant’s silence after arrest as evidence of substantive guilt. The pertinent portion of the record reads as follows (R. p. 31):
“Q. Did he make any statements to you on that occasion?
“A. No, sir. I didn’t question him at that time.
*400 “Q. Did he make a statement later on?
“A. He said that he had found—
“MR. WARD: We object.
“THE COURT: Yes, sustain the objection.”
In Chapman v. United States, 547 F.2d 1240 (5th Cir. 1977), the Court stated:
“Where there is but a single reference at trial to the fact of defendant’s silence, the reference is neither repeated nor linked with defendant’s exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant’s silence constitutes harmless error. . . . ” Chapman v. United States, supra, at 1250.
Here, there is nothing in the record that would suggest to the jury that the defendant' refused to give a statement because he was guilty. In fact, the testimony in the record indicates that the appellant did give a statement when he was asked to do so.
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur.